**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

TARA MARIE JONES,

                              Plaintiff,

          v.                                                    6:16-CV-443
                                                                (CFH)
CAROLYN M. COLVIN, COMMISSIONER
OF SOCIAL SECURITY,

                              Defendant.

_____

**APPEARANCES:**                          **OF COUNSEL:**

Law Offices of Steven R. Dolson          STEVEN R. DOLSON, ESQ.
126 N. Salina Street, Ste. 3B
Syracuse, New York 13202
Attorneys for Plaintiff

Social Security Administration           ANDREEA L. LECHLEITNER, ESQ.
Office of Regional General Counsel,
Region II
26 Federal Plaza, Rm. 3904
New York, New York 10278
Attorneys for Defendant


**CHRISTIAN F. HUMMEL,**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM DECISION AND ORDER

          Plaintiff Tara Marie Jones brings this action pursuant to 42 U.S.C. § 405(g)

seeking review of a decision by the Commissioner of Social Security ("Commissioner"

or "defendant") denying her applications for supplemental security income benefits

("SSI") and disability insurance benefits.  Dkt. No. 1 ("Compl.").[1]  Plaintiff moves for a

_____

          [1]  Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. §
636(c), FED. R. CIV. P. 73, Local Rule 72.2(b), and General Order 18.  Dkt. No. 7.

finding of disability, and the Commissioner cross moves for a judgment on the pleadings. Dkt. Nos. 9, 10. For the following reasons, the determination of the Commissioner is affirmed.

## I. Background

Plaintiff was born on October 10, 1978, was in general education courses in high school, and has a GED. T at 145-49. Plaintiff worked as a breakfast hostess/maid, cafeteria worker, cleaner, and doffer. Id. at 42, 434. Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits on January 23, 2013. Id. at 145-50. Plaintiff alleged a disability onset date of January 23, 2013. Id. at 167. This application was denied on May 30, 2013. Id. at 48-62, 67-75. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and a hearing was held on November 27, 2013. T at 79-81, 28-47. On October 15, 2014, ALJ Hortensia Haaversen issued her determination concluding that plaintiff was not disabled. Id. at 11-23. Plaintiff's timely request for review by the Appeals Council was denied, making the ALJ's findings the final determination of the Commissioner. Id. at 1-6. Plaintiff commenced this action on April 18, 2016. Compl.

## II. Discussion

### A. Standard of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled. See 42 U.S.C. §§ 405(g),

1383(c)(3); <u>Wagner v. Sec'y of Health & Human Servs.</u>, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. <u>Johnson v. Bowen</u>, 817 F.2d 983, 986 (2d Cir. 1987); <u>Berry v. Schweiker</u>, 675 F.2d 464, 467 (2d Cir. 1982). Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Halloran v. Barnhart</u>, 362 F.3d 28, 31 (2d Cir. 2004) (citing <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (internal citations omitted)). The substantial evidence standard is "a very deferential standard of review . . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder *would have to conclude otherwise*." <u>Brault v. Soc. Sec. Admin., Comm'r</u>, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks omitted). Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. <u>Martone v. Apfel</u>, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing <u>Johnson v. Bowen</u>, 817 F.2d 983, 986 (2d Cir. 1987)). However, if the correct legal standards were applied and the ALJ's finding is supported by supported by substantial evidence, such finding must be sustained, "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." <u>Rosado v. Sullivan</u>, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

## B.  Determination of Disability

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ."  42 U.S.C. § 423(a)(1).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  Id. § 423(d)(1)(A).  A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience.  Id. § 423(d)(2)(A). Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques."  Id. § 423(d)(3).  Additionally, the severity of the impairment is "based [upon] objective medical facts, diagnoses or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience."  Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a 'severe impairment' which significantly limits his [or her] physical or mental ability to do basic work activities.

> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a 'listed' impairment is unable to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added). The plaintiff bears the initial burden of proof to establish each of the first four steps. DeChirico v. Callahan,134 F.3d 1177, 1179-80 (2d Cir. 1998) (citing Berry, 675 F.2d at 467). If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere. Id. at 1180 (citing Berry, 675 F.2d at 467).

Next, an ALJ is to assess the degree of functional limitation, or the impact the claimant's mental limitations have on her "ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § 404.1520a(c). The ALJ must assess the plaintiff's degree of functional limitation in four functional areas: (1) "[a]ctivities of daily living," (2) "social functioning," (3) "concentration, persistence, and pace," and (4) "episodes of decompensation." Id. §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ must "rate" the functional degree of limitation in each of these

four areas as "[n]one, mild, moderate, marked [or] extreme." Id. §§ 404.1520a(c)(4),
416.920a(c)(4).  If the ALJ finds the degree of limitation in each of the first three areas
to be "mild" or better and identifies no episodes of decompensation, the ALJ "will
generally conclude" that the plaintiff's impairment is "not severe." Id. §
404.1520a(d)(1). Where the plaintiff's mental impairment is "severe," the ALJ must
"determine if it meets or is equivalent in severity to a listed mental disorder." Id. §
404.1520a(d)(2). "If yes, then the [plaintiff] is 'disabled.'" Petrie, 412 F. App'x at 408
(quoting 20 C.F.R. § 404.1520a(d)(2)).  "In addition, an ALJ must set forth the crucial
factors justifying his findings with sufficient specificity to allow a court to determine
whether substantial evidence supports the decision." Barringer v. Comm'r of Soc. Sec.,
358 F. Supp. 2d 67, 72 (N.D.N.Y. 2005) (citing Ferraris v. Heckler, 728 F.2d 582, 587
(2d Cir. 1984)).  However, a court cannot substitute its interpretation of the
administrative record for that of the Commissioner if the record contains substantial
support for the ALJ's decision.  See Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998).
If supported by substantial evidence, the Commissioner's finding must be sustained
"even where substantial evidence may support the plaintiff's position and despite that
the court's independent analysis of the evidence may differ from the [Commissioner's]."
Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  The Court must afford the
Commissioner's determination considerable deference, and may not substitute "its own
judgment for that of the [Commissioner], even if it might justifiably have reached a
different result upon a de novo review." Valente v. Sec'y of Health & Human Servs.,
733 F.2d 1037, 1041 (2d Cir. 1984).

## C. ALJ Decision

Applying the five-step disability sequential evaluation, the ALJ determined that plaintiff had not engaged in substantial gainful activity from January 23, 2013, the alleged onset date, through January 23, 2013. T at 13. The ALJ found at step two that plaintiff had the severe impairments of degenerative disc disease of the spine and inflammatory arthritis. Id. At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ then concluded that plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 416.97(b) except that she can lift and carry five pounds occasionally and ten pounds frequently and can stand and walk for six hours in an eight hour work day and sit for six hours in an eight hour work day. The individual would be capable of following and understanding simple instructions and directions or performing simple or complex tasks independently and is able to maintain attention and concentration and a regular schedule as well as learning new tasks. She is able to relate adequately with others, make appropriate decisions on an occasional basis and is appropriately able to deal with stress.

Id. at 16. At step four, the ALJ determined that plaintiff had no past relevant work. Id. at 21. Considering plaintiff's RFC, age, education, and work experience, together with the Medical-Vocational Guidelines, the ALJ further concluded that there were jobs existing in the national economy that plaintiff was able to perform. Id. The ALJ concluded that, pursuant to the testimony of the vocational expert, plaintiff could perform the jobs of cashier, assembler, and housekeeper. Id. at 22. Therefore, the

ALJ determined that plaintiff "has not been under a disability, as defined under the Social Security Act, since January 23, 2013, the date the application was filed." Id. at 22.

### D. Arguments

Plaintiff contends that the ALJ's determination is not supported by substantial evidence as she failed to apply properly the treating physician's rule. See Dkt. No. 9. Defendant counters that the ALJ properly applied the treating physician's rule, and that the decision is based on substantial evidence. The Court will address these arguments in detail below.

Generally, an ALJ is to give the opinion of a treating physician controlling weight as to the nature and severity of a claimant's impairments as long as the opinion "'is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" Foxman v. Barnhart, 157 F. App'x 344, 346 (2d Cir. 2005) (quoting 20 C.F.R. 404.1527(d)(2)); SSR 96-2p, Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions, 1996 WL 374188, at *1-2 (SSA July 2, 1996). As the Second Circuit has made clear:

> 'Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts.'

Kennedy v. Astrue, 343 F. Appx 719, 721 (2d Cir. 2009) (quoting Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004)).

Where controlling weight is not afforded, an ALJ is to consider certain "factors" in assessing the weight to give to the treating physician's opinion, including: (1) "the frequency of the examination and the length, nature and extent of the treatment relationship"; (2) "the evidence in support of the treating physician's opinion"; (3) "the consistency of the opinion with the record as a whole"; (4) whether the opinion is from a specialist"; and (5) "other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion." Halloran, 362 F.3d at 32 (quoting 20 C.F.R. § 404.1527(d)(4)). However, an ALJ is not required to explicitly list and discuss each factor or explain the weight given, and courts generally will not remand where "'the substance of the treating physician rule was not traversed.'" Kennedy, 343 F. App'x at 721 (quoting Halloran, 362 F.3d at 32)); Britt v. Astrue, 486 F. App'x 161, 164 (2d Cir. 2012). Although the Second Circuit "do[es] not fail to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion," remand for reconsideration may be unnecessary where "'application of the correct legal principles to the record could lead [only to the same] conclusion.'" Brogan-Dawley v. Astrue, 484 F. App'x 632, 633 (2d Cir. 2012)) (quoting Zabala v. Astrue, 595 F.3d 402, 409 (2d Cir. 2010)); Halloran, 362 F.3d at 33. An ALJ is to discuss more than just the apparent inconsistencies between the treating physician and other evidence in the record but also the consistency of the treating physician's opinions with the record. Foxman, 157 F. App'x at 347. As will be detailed below, the

9

question before the Court is not whether it would resolve the conflicting evidence in the same way as the Commissioner, but whether the Commissioner's resolution of the conflict was supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). For the reasons that follow, the Court concludes that the ALJ's application of the treating physician rule, including her decision to accord no weight to Dr. Ho's opinion as to plaintiff's physical limitations, is supported by substantial evidence.

Plaintiff's contention that an ALJ "must explicitly consider" the factors set forth in 20 C.F.R. § 404.1527(c) in according less than controlling weight to a treating physician is without force. Dkt. No. 9 at 4 (citing Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015)). Although Greek cites 20 CFR § 404.1527, which states that the ALJ must explicitly consider the above factors, the Second Circuit in Greek v. Colvin remanded because (1) "the ALJ's explanation for rejecting [the treating physician's] opinion was factually flawed," and (2) the ALJ failed to provide "any other explanation for why [the treating physician's] opinion was not 'well-supported by medically acceptable . . . techniques' or 'inconsistent with the other substantial evidence' . . . nor did he explicitly consider any of the factors for determining the weight given to a non-controlling opinion." Id. at 376. Here, although the ALJ did not explicitly state each of factors in 20 C.F.R. § 404.1527(c), her reasoning for according no weight to Dr. Ho's opinion is clearly reflected in her decision. T at 11-23.

The Second Circuit's concern in Greek was that it was unclear whether the ALJ at all considered the evidence from the treating physician, as "the only other evidence

10

that the ALJ might have considered and rejected was testimony from non-treating physicians and lay witnesses about the nature of Greek's condition." Id. at 376. Such a concern is not present here. As relevant here, Dr. Ho concluded, in an RFC questionnaire dated February 18, 2014, that plaintiff suffered from lumbar spondylolisthesis,[2] bipolar disorder, fibromyalgia, and rheumatoid arthritis. T at 520. The ALJ noted Dr. Ho's conclusion that the "combined affects" of plaintiff's physical and mental impairments would cause plaintiff to "frequently experience[] pain or other symptoms severe enough to interfere with attention and concentration needed to perform even simple work tasks." Id. at 20. Dr. Ho opined that plaintiff: could walk one city block without rest or severe pain; sit for ten minutes at one time before needing to stand up; could stand for five to ten minutes before needing to sit or walk around; could sit, stand, and walk for a total of less than two hours in an eight hour work day, with normal breaks; needed to "include periods of walking around during an eight hour work day of five to ten minutes and walk for five minutes each time"; required a job permitting "shifting positions at will, sitting, standing or walking and sometimes needs to take frequent unscheduled breaks to lie down during an eight hour work day and needs five to ten minutes to rest"; could rarely lift less than ten pounds, but could never lift more; could occasionally look down, turn her head to the left and right, look up, or hold her head in a static position; and could rarely twist and climb stairs, but never stoop, bend, crouch, squat, or climb ladders. Id. Further, the ALJ reported Dr. Ho's conclusion that

---

[2] "Spondylolthesis is subluxation of lumbar vertebrae, usually occurring during adolescence. It usually results from a congenital defect in the pars interarticularis (spondylolysis." THE MERCK MANUAL OF DIAGNOSES AND THERAPY 385 (19th ed. 2011).

plaintiff would be likely to miss four or more days of work per month due to her impairments, and, thus is not capable of sustaining full-time work. Id. The ALJ gave no weight to the findings of plaintiff's treating physician, Dr. Ho. T at 20. The ALJ concluded that Dr. Ho's "assessment is not supported by the objective medical evidence or even by his own treatment records. I find Dr. Ho's assessment no [sic] entirely credible even by his own assessment." Id.

In addition, although not explicitly discussed by the ALJ, Dr. Ho also concluded within his RFC that plaintiff's prognosis was "poor." T at 521. Further, Dr. Ho responded, "possibly/unknown" to a question that asked whether plaintiff was a malingerer, citing her "many psych issues." Id. Further, in response to the question whether plaintiff's "impairments . . . [were] reasonably consistent with the symptoms and functional limitations" set forth within the RFC, Dr. Ho responded, "no," and explained that plaintiff's "symptoms and limitations are out of proportion to imaging findings." Id.

First, plaintiff contends the ALJ failed to apply the treating physician rule because she did not consider the length, nature, frequency, or extent of her treatment relationship with Dr. Ho. Dkt. No. 9 at 7. However, the evidence cited within the ALJ's decision, as well as the text of the decision itself, reflects that the ALJ considered the frequency, length, nature and extent of treatment; the amount of medical evidence supporting Dr. Ho's opinion; the consistency of Dr. Ho's opinion with the remaining medical evidence; and whether Dr. Ho is a specialist. Greek, 802 F.3d at 375. The ALJ referenced several of Dr. Ho's medical treatment letters, discussing in great detail

plaintiff's June 13, 2012, January 13, 2013, and January 15, 2014 visits. T at 18-19.

This selection of of treatment records is reflective of the overall time span that plaintiff

sought treatment with Dr. Ho, as her RFC indicates that her opinions reflect treatment

of plaintiff from July 25, 2012 to January 15, 2014. Id. at 18-20, 521. Thus, the ALJ's

reference to these varying treatment records acknowledges the length and frequency of

Dr. Ho's treatment relationship with plaintiff.

Next, plaintiff argues that the ALJ failed to consider that Dr. Ho is a specialist.

Dkt. No. 9 at 7. Although the Court acknowledges that the ALJ did not explicitly

mention that Dr. Ho is a spine specialist, "it is well established that where an ALJ's

reasoning and adherence to the Regulations is clear, he is not required to explicitly go

through each and every factor of the Regulation." Leonard v. Commissioner of Soc.

Sec., 14-CV-1353 (GTS/WBC), 2016 WL 3511780, at *3 (N.D.N.Y. May 19, 2016)

(rejecting the plaintiff's argument that the ALJ committed legal error in failing to discuss

that the treating physician was a specialist in orthopedic medicine) (citing Atwater v.

Astrue, 512 F. App'x 67, 70 (2d Cir 2013)). The ALJ cited to Dr. Ho's treatment

records, and explicitly indicated that plaintiff treated with Dr. Ho for her complaints of

low back and bilateral lower extremity pain. T at 18. The records themselves indicate

that Dr. Ho is part of the SUNY Upstate PMR Spine Clinic. Id. at 266, 269. The ALJ's

reference to these records reflects the ALJ's acknowledgment of Dr. Ho's apparent

specialty in treatment of spinal conditions. See, e.g., Leonard, 2016 WL 3511780, at *4

(noting that the ALJ's reference to the plaintiff receiving treatment from the treating

physician at Syracuse Orthopedic Specialists reflects the ALJ's acknowledgment that

the treating physician was an orthopedist). Accordingly, the Court declines to find that the ALJ improperly failed to consider Dr. Ho's specialty. The ALJ's detailed review of Dr. Ho's treatment records, and acknowledgment that plaintiff sought treatment with Dr. Ho for back pain, suffices to demonstrate that the ALJ considered her specialty. See, e.g., Rojas v. Astrue, 09-CV-6698 (DLC), 2010 WL 1047626, at *7 (S.D.N.Y. Mar. 22, 2010) (concluding that the ALJ "essentially addressed each of the 'factors'" in 20 C.F.R. 404.1527(c) where ALJ noted that the physician "was a psychiatrist, and therefore a specialist; considered treatment notes spanning the entire period [of treatment]; and considered the evidence to support [physician's] assessment[,]" the ALJ complied with this portion of the treating physician rule).

Third, plaintiff contends that the ALJ failed to detail the evidence supporting Dr. Ho's opinion. Dkt. No. 9 at 5-6. Specifically, plaintiff contends that Dr. Ho's own treatment records support plaintiff's limitations insofar as he noted following the January 15, 2014 visit, "4/5 strength in bilateral lower extremities," "pain on light palpation over bilateral lumbar paraspinals, sacroiliac joints and trochanteric bursa," positive lumbar facet challenge bilaterally, and "positive seated straight leg raise bilaterally in an L5 distribution." Id. at 275-76, 492. However, the ALJ's decision does reflect an assessment of Dr. Ho's treatment records and whether his RFC was consistent with his own treatment notes. T at 20. Dr. Ho's treatment notes do not reflect the degree of extreme limitation that he set forth in his RFC. Id. at 521. At a visit with Dr. Ho on July 25, 2012, on examination, plaintiff was in no acute distress. Id. at 270. Plaintiff had no pain after palpation over bilateral lower lumbar paraspinals, bilateral sacroiliac joints, or

14

bilateral trochanteric bursas.  Id.  Plaintiff had positive lumbar facet challenge bilaterally; positive lumbar Spurling's on the right in an L5 distribution, negative on the left; and full strength in her lower extremities, bilaterally.  Id.  Further, plaintiff's deep tendon reflexes were 2+ at bilateral patellae, and 1+ at bilateral ankles. Her sensation to light touch was in tact in both lower extremities, but "decreased" in the left L5 distribution.  Id.  She had negative FABER bilaterally, negative sacral compression test bilaterally, and negative straight-leg raise bilaterally.  Id.  Dr. Ho encouraged plaintiff "to continue physical therapy and to talk to them about Pilates-based program."  Id.

At a September 26, 2012 visit with Dr. Ho, plaintiff was in no acute distress, and had a flexed forward posture.  T at 271.  Plaintiff was able to ambulate independently. Id.  Plaintiff was "encouraged to continue a home exercise program on a routine basis." Id. at 272.  Dr. Ho. "showed [plaintiff] several exercises today, which she was able to reproduce, for her core strength."  Id.  Two months later, at a November 12, 2012 visit with Dr. Ho, plaintiff was "in no acute distress" with a "slightly flexed forward posture."  T at 273.  She ambulated independently.  Id.  No atrophy was noted "from side to side with regards to her lower extremity musculature."  Id.  She had five out of five strength in her lower extremities "[e]xcept for 5-/5 left ankle dorsiflexion."  Id.  She had pain on palpation over her left lower lumbar paraspinals, but no pain on palpation over right lower lumbar paraspinals.  Id.  She had negative lumbar Spurling's bilaterally, and negative lumbar facet challenge bilaterally.  Id.  Dr. Ho again encouraged plaintiff to continue home exercise on a routine basis.  Id.

At the January 23, 2013 visit with Dr. Ho, plaintiff was in no acute distress and

was able to heel-toe walk.  T at 267.  She had "flexed forward posture."  Id.  She did not have pain on palpation over bilateral lumbar paraspinals and sacroiliac joints.  Id.  She had positive lumbar facet challenge bilaterally, and negative lumbar Spurling's bilaterally.  Id.  Plaintiff had negative seated straight leg raise bilaterally.  Id.  Dr. Ho encouraged plaintiff to continue a home exercise program on a routine basis.  Id.

On April 25, 2013, Dr. Ho again indicated that plaintiff was in no acute distress, with a "flexed forward posture."  T at 515.  Plaintiff experienced pain on palpation over bilateral lumbar paraspinals, no pain on palpation over bilateral SI joints.  Id.  She had positive lumbar facet challenge bilaterally, and negative lumbar Spurling's bilaterally. Id.  Plaintiff had negative seated straight leg raise on the right, positive on the left in an L5 distribution.  Id.   Plaintiff denied pain with passive range of motion of her bilateral hips.  Id.   Plaintiff was encouraged to continue a home exercise program "on a routine basis."  Id.

On July 24, 2013, plaintiff was in no acute distress.  T at 507.  Plaintiff presented with "flexed forward posture."  Id.  Plaintiff had pain on palpation over right lumbar paraspinals and sacroiliac joints, no pain on palpation over the left lumbar paraspinals, left SI joint, and bilateral trochanteric bursae.  Id.   She had positive lumbar facet challenge bilaterally, and positive lumbar Spurling's to the left in an L5 distribution, negative on the right.  Id.   Plaintiff had five out of five strength in her lower extremities. Id.  Plaintiff's sensation to light touch was intact in her bilateral lower extremities, except decreased along the right medial thigh, and left lateral thigh/calf.  Id.   Her deep tendon reflexes are 2+ at both patella and 1+ at both ankles.  Id.   Plaintiff was encouraged to

continue a home exercise program on a routine basis.  Id.

On her October 11, 2013 visit with Dr. Ho, plaintiff was reported to be in no acute distress.  T at 500.  Plaintiff had five out of five strength in her lower extremities.  Id. Plaintiff reported pain over bilateral lumbar paraspinals, sacroiliac joints, and trochanteric bursa, but no pain on palpation over bilateral thoracic paraspinals.  Id. Plaintiff had positive lumbar facet challenge bilaterally, and negative lumbar Spurling's bilaterally.  Id.  Her sensation to light touch was intact in her bilateral lower extremities "except decreased in a right L5 distribution."  Id.  Plaintiff's deep tendon reflexes were 2+ at both patella and 1+ at both ankles.  Id.  Plaintiff was "encouraged to continue a home exercise program as much as she can tolerate."  Id.

The ALJ also discussed plaintiff's January 15, 2014 visit with Dr. Ho[3] in detail within her decision:

> pain on light palpatation over bilateral lumbar paraspinals, sacroiliac joints and teochanteric bursa.  Positive lumbar facet challenge bilaterally, negative lumbar Spurlings bilaterally.  Positive seated straight leg raise bilaterally in an L5 distribution.  She denied pain with passive range of motion of bilateral hips.  She had 4/5 strength in bilateral lower extremities, decreased due to pain.[4]  She was encouraged to continue a home exercise program on a routine basis and to continue with prescribed medication. She was again encouraged to quit smoking and advised that she must quit in order to pursue surgery.  However, at this time, she stated she is not willing to quit smoking.

---

[3]  The January 15, 2014 visit was suggestive of the greatest of limitations of all of Dr. Ho's treatment notes, as it is the only visit with Dr. Ho in which plaintiff had reduced strength in her bilateral lower extremities and was reported as uncomfortable, rather than in no acute distress.  T at 20.

[4]  At this visit, Dr. Ho noted that plaintiff appeared "uncomfortable" and had a "flexed forward posture."  T at 492.  Further, plaintiff "denie[d] pain with passive range of motion of bilateral hips."  Id. at 493.

T at 20 (citing T at 492-93).

Although Dr. Ho noted on January 15, 2014 that plaintiff had reduced motor strength of a four out of five in her bilateral lower extremities "due to pain," on all other examinations with Dr. Ho in the record, plaintiff was reported to have full motor strength.[5] T at 266-67, 270, 271, 273, 492. Further, Dr. Ho indicated that plaintiff was able to ambulate independently, and/or walk on her heels and toes. Id. at 267, 271, 273. Although Dr. Ho observed that plaintiff sat with a "flex forward posture," another of plaintiff's treating physicians noted that plaintiff demonstrated good posture during similar time periods. T at 277, 280, 285, 288. In all but one visit, Dr. Ho's impression was that plaintiff was not in any acute distress. Id. at 267, 270, 271, 273, 500, 507, 515.

Although some of Dr. Ho's clinical findings were suggestive of some limitations, T at 492-93, her records do not support the significant limitations set forth in the RFC. The ALJ detailed plaintiff's treatment records with Dr. Ho, including her complaints of pain, flexed forward posture, pain on palpation, and positive lumbar facet challenge, bilaterally. Id. at 18. The ALJ also noted that plaintiff presented to Dr. Ho with "negative seated straight leg raise bilaterally," and the ability to heel and toe walk. Id. (citing Exh. 8F [T at 266]). Further, despite identifying these limitations in he RFC, Dr. Ho's treatment records do not reveal that plaintiff complained of head or neck pain, or an inability to move or hold her head in certain positions; thus, the undersigned fails to find

---

[5] The only possible exception is that, on November 12, 2012, plaintiff was reported to have "5-/5 left ankle dorsiflexion." T at 273. This finding was not explained within the record. Id.

support for these identified limitations in Dr. Ho's RFC.  T at 523.  Similarly, although

plaintiff complained of pain and occasionally had diminished sensitivity, Dr. Ho's

treatment records show that plaintiff was able to ambulate independently and could

heel-toe walk.  Id. at 267, 271, 273.  There are no treatment records that suggest that

plaintiff could walk for only one city block at one time, sit for ten minutes at a time, stand

for five to ten minutes at a time, and sit/stand/walk for a combined total of less than two

hours in an weight-hour work day.  Id. at 521-22.  Indeed, at every visit, Dr. Ho

encouraged plaintiff to engage in an exercise program.  Id. at 267, 270, 271, 273, 500,

507, 515; Rivers v. Astrue, 280 F. App'x 20, 200 (2d Cir. 2008) (the Court noted that a

treating physician's statement that the plaintiff should participate in an exercise program

supported the ALJ's finding that the plaintiff could perform light work).

    In addition, despite noting extreme limitations in nearly all physical areas, Dr. Ho

also indicates that plaintiff is "possibly" a malingerer and that her "symptoms and

limitations were out of proportion to imagine findings."  T at 521.  The ALJ also

considered Dr. Ho's treatment records wherein he indicated that plaintiff sought care for

low back and bilateral lower extremity pain.  Id. at 18.  The ALJ noted that plaintiff

attended physical therapy, received injection therapy, and reported "some

improvement: with prescribed pain medication."  Id.  The ALJ further observed that,

despite "complaints of constant severe pain, physical exams generally note that the

claimant was in no acute distress."  Id.  Thus, the ALJ reasonably concluded that the

severe limitations set out in Dr. Ho's RFC were not supported by her treatment records.

See generally, Rodriguez v. Colvin, 12-CV-3931 (RJS/RLE), 2014 WL 5038410, at *5-6

(S.D.N.Y. Sept. 29, 2014) (holding that, in applying the treating physician rule to

determine the weight to afford to a treating physician's opinion, an ALJ can reasonably consider conflicts between a treating physician's restrictive RFC and treatment notes suggesting lesser restrictions).

In addition to discussing Dr. Ho's treatment records, the ALJ referred to objective evidence in the record that supported less severe limitations than those opined by Dr. Ho, as well as questioning by other practitioners as to the truthfulness of her complaints of pain and limitation.  In addition to the records discussed in detail above, the ALJ noted that plaintiff's November 13, 2013 joint examination with Dr. Allan M. Smiley, MD at Slocum-Dickson Medical Group was "unremarkable."  T at 19.  Further, during this examination, plaintiff was "alert oriented in no acute distress[,]" and had "no synovitis in the small joints of the hands, wrists, elbows, and shoulders."  Id. at 462.  The ALJ also referenced treatment records from Dr. Smiley which indicated that, "in the lower extremity there was a tender exam of the back with positive straight leg raise is 50 [degrees] on the left[,] positive sneeze[,]" but also provided that "the ankles are normal[,]" that plaintiff walked with "a completely bizarre gait," and "question[ed] whether [plaintiff's] pain is real[.]"  Id. at 19 (citing T at 462).  Additionally, objective medical evidence from Dr. Smiley further supports the ALJ's findings, as Dr. Smiley indicated that he reviewed plaintiff's "most recent labs," which he found to be "in the expected range," as well as her x-rays, and "found there is no significant pathology." Id. at 462.

These findings are reflected in other objective medical evidence, such as a March 8, 2013 nuclear medicine whole body scan, the findings of which revealed "no areas of significant abnormal increased or decreased tracer uptake identified," "no

scintigraphic evidence of a significant metabollically active bone process.  There is no

scintigraphic evidence of significant arthritic disease."  Id. at 485. The impression of the

whole body scan was "relatively unremarkable whole-body scan."  Id.  The ALJ also

referenced plaintiff's February 17, 2012 visit with Dr. Emile Wassel, M.D., where plaintiff

was found to have normal range of motion, no evidence of trauma or deformity, and

good muscle strength.  T at 18 (citing T at 427-28).   In sum, the ALJ discussed both

the medical records that demonstrate any limitations plaintiff demonstrated, as well as

medical records that suggest lesser limitations.  Accordingly, the ALJ met her burden of

assessing "the evidence in support of the treating physician's opinion."  Halloran, 362

F.3d at 32.

Finally, plaintiff argues that the ALJ failed to discuss the consistency of Dr. Ho's

opinion with the record as a whole.  Dkt. No. 9 at 5-7.  Specifically, plaintiff contends

that Dr. Ho's opinion is supported by the following: (1) imaging studies reflect back and

neck impairments; (2) Dr. Sarah Shirazi's opinions that plaintiff should "avoid lifting any

weight greater than 15 pounds" and that she had "back mild focal tenderness on

palpation of L/S spine with mild to moderate restriction in movement"; (3) Christopher L.

Watts, P.A.'s comments that plaintiff "walks with a painful limp favoring the right leg,"

has "diminished sensation of the right lower leg," and has "exquisite tenderness to the

mid low back on light palpation with positive straight leg raise bilaterally causing

increased low back and buttock pain on straight leg raise; and (4) Dr. Jennifer Quinn's

notations that plaintiff has an "abnormal gait" and was "dragging R foot."  Dkt. No. 9 at

5-7; T at 357, 383, 538, 567, 616.

First, the ALJ's decision reflects that the ALJ considered plaintiff's imaging

studies. T at 18 ("X-rays of the lumbar spine showed s grade 2 spondylolisthesis of L5/S1 with spondlolysis at this level. She had no degenerative changes to speak o but did appear to have some foraminal amitosis of her lumbar spine at L5-S[1] on lateral views"; "MRI . . . was independently reviewed and showed severe left-sided foraminal stenosis at L5-S1 with mild to moderate foraminal stenosis at L5-81[6] on the right"; "x-rays of the lumbar spine taken January 28, 2012 revealed spondylolsis bilaterally at L5 and grade 1 spondylolisthesis of L5 and mild levoscoliosis"; "X-rays of the bilateral elbows, hand and wrists showed no acute findings").

Plaintiff correctly notes that the ALJ did not discuss explicitly the portion of Dr. Sarah Shirazi's medical record wherein she noted, in March 2012, that plaintiff should avoid lifting more than fifteen pounds. Dkt. No. 9 at 6. To the extent plaintiff suggests that Dr. Shirazi's recommendation that plaintiff should avoid lifting greater than fifteen pounds supports Dr. Ho's RFC wherein she limited plaintiff to lifting no more than ten pounds on rare occasions, such argument is without merit, as Dr. Ho set forth a substantially greater restriction than Dr. Shirazi. Regardless, the ALJ's RFC assessment is reflective of this limitation, as the ALJ limited plaintiff to lifting five pounds occasionally and ten pounds frequently.[7] T at 16, 357, 383. As the ALJ adopted greater limitations than that set forth by Dr. Shriazi, it cannot be said that the ALJ's RFC

---

[6] L5-81 is in the original record. It is likely that the ALJ intended to type L5-S1.

[7] It is possible that the ALJ intended to write that plaintiff is limited to lifting and carrying ten pounds occasionally, and five pounds frequently, as such a limitation would appear to make more sense in this context; however, regardless of whether this is a typographical error, or a proper representation of the ALJ's RFC, such does not change the analysis, as the ALJ concluded that plaintiff is capable of light work, which requires "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567 (b).

is contrary to Dr. Shirazi's findings, even if she declined to adopt the more significant limitations suggested by Dr. Ho.

Plaintiff further contends that the ALJ erred insofar as she did not explicitly discuss the portion of Dr. Quinn's records wherein she noted, (1) on December 6, 2013, that plaintiff dragged her right foot and had "exaggerated tenderness over lumbar spine," and (2) on March 7, 2014 visit that plaintiff had an abnormal gait. T at 538, 567.[8] However, despite Dr. Quinn's notation of an abnormal gait and lumbar tenderness, on July 12, 2013 and January 7, 2014 visits, Dr. Quinn reported that plaintiff a normal range of motion, and no "tenderness, decreased strength, sensory deficit, inflammatory conditions or gait problems." Id. at 563-64, 576. Similarly, despite noting tenderness to palpation along lumbar spinal muscles during a May 8, 2013 visit, Dr. Quinn noted that plaintiff's "ROM is within normal limits in all major joints" and that her upper and lower extremities revealed normal strength. Id. at 583.

Similarly, plaintiff argues that the ALJ improperly declined to consider the records of Christopher Watts, P.A. Dkt. No. 9 at 6. On March 28, 2014, Mr. Watts noted that plaintiff walked with a limp favoring her right leg, or had diminished sensation of the right lower leg, and demonstrated "exquisite tenderness to the mid low back on light palpation with positive straight leg raise bilaterally causing increased low back and buttock pain on straight leg raise." T at 616. However, as defendant points out, Mr. Watts also noted full motor strength in all areas except the "iliopsoas with 4 out of 5 right TA and EHL compared to 5 our of 5 on the left, 5 out of 4 bilateral." Id. Further,

---

[8]     Of note, the ALJ did discuss explicitly portions of this specific medical visit within her decision, insofar as it related to Dr. Quinn's note that plaintiff denied exposure or use of drugs. T at 20 (citing T at 536).

Mr. Watts reported that plaintiff's reflexes were brisk but equal.  Id.  In addition, an April 4, 2014 visit with Dr. Ian Madom, the attending neurosurgeon at the practice where Mr. Watts works, plaintiff was reported to have motor strength that was five out of five in bilateral iliopsoas, quadriceps, tibialis anterior, Extensor Hallucis Longus, gastrocsoleus, and her "sensation was intact with light touch and equal to pinprick in the L2-S1 distribution bilaterally."  Id. at 614.  Significantly, the limitations that Mr. Watts notes are not reflected during the exam that occurred one week later with Dr. Madom. Id. at 614, 616. Moreover, although the ALJ declines to explicitly discuss either of these reports, it does not mean they were not considered.

Other records, although not explicitly discussed by the ALJ, nor raised by plaintiff in her brief, are support less restrictive findings than those opined in Dr. Ho's RFC.  At February 1, 2012 and February 22, 2012 visits with Dr. Ajay Goel,[9] plaintiff's gait was reported to be normal upon examination.  T at 277, 280.  She was in no acute distress and displayed "good posture."  Id.  Similarly, at June 19, 2012 and January 15, 2013 visits, plaintiff was again reported to be in no acute distress and exhibited "good posture."  Id. at 285, 288.  In addition, Dr. Dayal D. Raja, M.D.[10] of Slocum-Dickson Medical Group noted that plaintiff had a normal gait upon examination, and indicated that plaintiff could "undergo exercise testing and/or participate in exercise program."  Id. at 476.  She further observed normal ROM and strength bilaterally in plaintiff's upper

---

[9]  Although the ALJ does not explicitly discuss Dr. Ajay Goel, she does refer to records from Rome Medical Group where he practiced. T at 18.

[10]  The ALJ did not explicitly mention Dr. Dayal Raja, but did refer to records from Slocum Dixon Medical Group, where he practiced.  T at 19 (citing 403, 460-61).

and lower extremities.  Id. at 477.  Consultative examiner Dr. Puri noted that plaintiff

had a normal gait and stance, normal straight leg raising, equal deep tendon reflexes,

five out of five motor strength, and unimpaired sensation.  T at 441.  Dr. Puri noted a

slightly decreased lumbar range of motion of five to ten degrees, but full range of

motion elsewhere.  Id.  Dr. Puri observed plaintiff's hand and finger dexterity to be in

tact.  Id.   Further, as the ALJ referenced, plaintiff's activities of daily living do not

demonstrate significant limitations as those opined by Dr. Ho.  T at 17-18.  The ALJ

noted that plaintiff engages in physical activities, such as kayaking and camping, and

contended that she could sit for no longer than fifteen minutes, but "was seated longer

than that at the hearing."  T at 18.

Although the ALJ did not discuss all of the above medical records in her

decision, this does not amount to reversible error.  Rorick v. Colvin, __ F. Supp 3d __,

14-CV-388 (WGY), 2016 WL 7175272, at *7 (N.D.N.Y. Nov. 23, 2016) (citing Otrs v.

Astrue, No. 5:11-512, 2012 WL 6803588, at *11 (N.D.N.Y. Nov. 14, 2012) ("While [the

hearing officer] could have discussed the factors listed in the regulations neatly and in

more detail, this shortcoming does not amount to reversible error because the rationale

for her decision is clear and her ultimate determination is supported by substantial

evidence.")).  It is well settled that, as long as "the evidence of record permits us to

glean the rational of an ALJ's decision," an ALJ is not required to "have mentioned

every item of testimony presented to him or have explained why he considered

particular evidence unpersuasive or insufficient to lead him to a conclusion of

disability.'"  Petrie v. Astrue, 412 F. App'x 401, 407 (2d Cir. 2011) (quoting Mongeur,

722 F.2d at 1040).  Here, the Court is "'able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence.'"  Mongeur, 722 F.2d at 1040 (quoting Berry, 675 F.2d at 469). The ALJ cites to several of Dr. Ho's records – including portions of her records that plaintiff argues are supportive of Dr. Ho's restrictive RFC, treatment records from other providers, imaging studies, and plaintiff's reported activities of daily living.  T at 17-22.

Finally, plaintiff appears to suggest, in one paragraph of her brief, that the ALJ was required to recontact Dr. Ho in order to seek clarification for any ambiguity relating to his opinion.  Dkt. No. 9 at 5.  An ALJ is only required to recontact a physician where the records received are "inadequate to determine whether [the claimant was] disabled."  Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996).  Here, recontacting Dr. Ho was not required, as the medical evidence within the record was sufficient to assess whether plaintiff was disabled; there was no treatment gaps or ambiguity, nor does plaintiff offer any evidence or citations to the record to demonstrate that such ambiguity exists.  See Dkt. No. 9. The record contains a significant number of Dr. Ho's treatment records.  T at 267-73, 500-51; Crysler v. Astrue, 563 F. Supp. 2d 418, 432 (N.D.N.Y. 2008) (citing 20 C.F.R. §§ 404.1512(e), 146.912(e)) ("[A]n ALJ may re-contact medical sources if the evidence received from the treating physician or other medical sources is inadequate to permit a reasoned disability determination and additional information is needed to resolve the question.")  The fact that the ALJ concluded that Dr. Ho's restrictive RFC was unsupported by his treatment records or other medical evidence in the record does not mean that his treatment records contained ambiguities or that

additional medical evidence was necessary; it was within the ALJ's authority to conclude that the record was sufficient for her to assess whether plaintiff is disabled. See Rorick, 2016 WL 7175272, at *7 (citing Micheli v. Astrue, 501 F. App'x 26, 29-30 (2d Cir. 2012) ("The mere fact that medical evidence is conflicting or internally inconsistent does not mean that a [hearing officer] is required to re-contact a treating physician. Rather . . . the [hearing officer] will weigh all of the evidence and see whether [he] can decide whether a claimant is disabled based on the evidence he has, even when that evidence is internally inconsistent.")). The ALJ's determination makes clear that she considered Dr. Ho's treatment records, plaintiff's imaging studies, and the records of plaintiff's other medical providers and consultative examiners. T at 18.

In sum, the question before the Court is not whether there is substantial evidence to support that plaintiff is disabled; rather, whether there is substantial evidence to support the ALJ's determination. See, e.g., McIntyre v. Colvin, 758 F.3d 146, 149 (2d Cir. 2014). The Court concludes that the ALJ's decision to accord no weight to the treating physician's restrictive RFC is supported by substantial evidence, and her finding that plaintiff is not disabled is also supported by substantial record evidence. Accordingly, the matter must be affirmed.

### III. Conclusion

Having reviewed the administrative transcript and the ALJ's findings, for the reasons stated herein, the undersigned concludes that the Commissioner's determination is supported by substantial evidence. Accordingly, it is hereby:

**ORDERED**, that

The Commissioner's decision denying disability benefits is **AFFIRMED**; and it is further

**ORDERED**, that plaintiff's motion for judgment on the pleadings (Dkt No. 9) is **DENIED**; and it is further

**ORDERED**, that defendant's cross-motion for judgment on the pleadings (Dkt. No. 11) is **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court serve copies of the decision on the parties in accordance with Local Rules.

**IT IS SO ORDERED.**

Dated: February 24, 2017
        Albany, New York

Christian F. Hummel
U.S. Magistrate Judge